**NATIONAL SURETY CORPORATION,**
Appellant,

v.

**MORGAN COUNTY, Kentucky, Appellee.**

Court of Appeals of Kentucky.

Feb. 7, 1969.

Rehearing Denied May 23, 1969.

John L. Davis, Stoll, Keenon & Park, Lexington, Ky., for appellant.

Ralph Walter, West Liberty, for appellee.

DAVIS, Commissioner.

Morgan County obtained a judgment against Arlie Gilliam, former sheriff of that county, and National Surety Corporation, which was surety on Gilliam's county revenue bond for the period beginning June 1, 1964, and terminating May 31, 1965. The judgment provides recovery in favor of the county against the ex-sheriff and his surety based upon an admitted shortage in the 1964 tax accounts of the sheriff due the county in a sum approximating $9,000. No dispute about the amount due is presented, nor does the ex-sheriff appeal from the judgment.

The surety appeals, asserting that it is absolved from liability because the county (through its fiscal court and county judge) discovered a dishonest act or omission of the sheriff which occurred before the sheriff defaulted in his payment of funds due the county. The exact provision of the bond relied on by the surety is:

"All liability of the Surety hereunder for future acts and omissions of the principal shall terminate at the end of the period shown in the Whereas clause above, unless terminated earlier upon the happening of any of the following events: (a) discovery of the Obligee of any dishonest act or omission of the principal, * * *."

It appears that Sheriff Gilliam had executed a similar bond with the same surety covering the period from June 1, 1963, to May 31, 1964. At a meeting of the Morgan County Fiscal Court held on June 17, 1964, Gilliam presented his proposed settlement for the tax revenues collected by him during the pertinent period of the 1963–1964 bond. At that meeting it was shown that Gilliam owed the Board of Education of Morgan County slightly more than $5,000 and was without sufficient funds to pay the item. The Morgan County judge pointed out: "We can't approve this settlement until the financial part is taken care of." The judge testified that all sums due the county and other agencies were paid, and only the school item remained unsatisfied. The county school superintendent, who was in attendance at the meeting, briefly withdrew with the sheriff from the meeting and made arrangements, whereby the sheriff executed his personal note to the Board of Education in an amount equal to the taxes shown due the Board of Education. Then the county superintendent and the sheriff returned to the meeting and made known to the fiscal court that the sheriff "had made arrangements to take care of the shortage." The nature of that "arrangement" was not divulged to the Morgan County Fiscal Court at that time. The sheriff later paid the note, apparently from tax revenues collected from the ensuing year's levies.

It is admitted that the surety was never informed of the irregularity in Gilliam's accounts and accounting which had come to light at the meeting on June 17, 1964. The bond upon which the present judgment is predicated purports to have been signed, sealed, and dated June 1, 1964. The default of the sheriff occurred after the execution of the second bond, and there is no question that such default is covered by the bond unless the surety is entitled to release from liability on the basis that the obligee discovered a "dishonest act or omission" before the default upon which the present judgment is based.

We will not explore the question of whether the "arrangement" between the sheriff and the superintendent of schools was a "dishonest act or omission" within the meaning of the bond provisions and in the circumstances we have related. Neither are we disposed to re-examine the question of a possible estoppel against the county on the theory that the surety would not have signed Gilliam's bond if the county had made appropriate disclosure to the surety. Maryland Casualty Co. v. Magoffin County Bd. of Ed., Ky., 358 S.W.2d 353.

The bond upon which the judgment rests was executed pursuant to KRS 134.-230.[1] Neither that section nor any other provision of KRS Chapter 134, or any other provision of the statutes, authorizes any such self-terminating provision as is incorporated in the bond before us and relied on by appellant for relief in this action. It will be noted that KRS 134.270 does provide in substance that neither the sheriff nor his surety shall be liable for any act or default of the sheriff in connection with his revenue duties, unless notice of the act giving rise to the claim has been given within ninety days after discovery of such an act, "or at the latest within one year after the end of the year within which the bond was executed." It is familiar law that a statutorily-required fidelity bond may not contain clauses limiting liability in derogation of the statutory requirements for the bond. See Bankers' Surety Co. v. City of Newport, 162 Ky. 473, 172 S.W. 940, in which it was said in part:

"Under the authority of Connelly v. American Bonding & Trust Co., 113 Ky. 903, 69 S.W. 959, 24 Ky. Law Rep. 714, such bonds are controlled by these sections of the statute, 'and must be read in connection therewith.'

1. It may have been executed under KRS 134.250, but the record is unclear regarding this, and the same result would obtain in either case.

"By an act of 1908, which is section 186d, Kentucky Statutes, it is provided that such bonds, 'shall be limited in a definite penal sum, which shall be determined and fixed by the officer or officers whose duty it is to approve the bond.' It will thus be seen that the statutory obligation, which is really a part of the contract obligation for public officials, is that the officer will faithfully discharge the duties of the office, or else the surety will pay the loss occasioned thereby, not to exceed the sum fixed in the bond. We find no authority for any other contract limitation."

\*　　\*　　\*　　\*　　\*　　\*

"We are of the opinion that the bond was executed in the light of the statutes referred to and should be read in connection therewith, and any limitation in the bond in derogation of the statutory requirements is not binding as to the city. And the city having sustained the loss as ascertained by the commissioner and adjudged by the lower court, and this loss resulting from the failure of the principal, a public official, to faithfully discharge the duties of the office, the surety is liable." Id. 172 S.W. 941.

Of like import is National Surety Co. v. Commonwealth ex rel. Coleman, 253 Ky. 607, 69 S.W.2d 1007. The same principle was recognized in Maryland Casualty Co. v. Magoffin County Bd. of Ed., Ky., 358 S.W.2d 353, in which Bankers' Surety Co. v. City of Newport, cited and quoted above, was mentioned with approval.

It is obvious that the purpose of the bond in question is to assure faithful payment to the appropriate public agency of public revenues collected by the sheriff. To permit a built-in "self-destruct" clause to defeat a surety's liability on such a bond would frustrate the salutary purpose of the bond. Moreover, to allow such an escape clause to be applied retrospectively after a judicial determination of when and if the obligee had discovered a "dishonest act or omission" would render chaotic the very fiscal functions which should be maintained in exact order. For the reasons stated, it is our conclusion that the bond provision upon which appellant relies is ineffective and fails of absolving the surety from liability. The trial court did not predicate its judgment upon the reasons we have advanced, but the result reached was a proper one.

The judgment is affirmed.

All concur.